**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SCOTT A. ELVERS and APRIL L. ARAGON, | ) ) ) | |
| Plaintiffs, | ) ) | 13 C 8912 |
| v. | ) ) ) | Judge Jorge L. Alonso |
| OFFICER KARLOS #761, OFFICER DOWDELL #289, OFFICER RUMINSKI #155, LIEUTENANT FLYKE #99, SERGEANT TRINIDAD #41, and COOK COUNTY, ILLINOIS, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In their first amended complaint, plaintiffs sue defendants for, as relevant here, unlawfully searching Aragon's apartment (Count I), falsely arresting Elvers (Counts II and III), and maliciously prosecuting Elvers (Count IV). The case is before the Court on plaintiffs' Federal Rule of Civil Procedure 56 motion for summary judgment on these claims. For the reasons set forth below, the Court denies the motion.

**Facts**

In December 2012, plaintiff Aragon rented apartment 1B at 1547 Silver Lane in Palatine, Illinois. (Defs.' LR 56.1(b)(3)(B) Stmt. ¶ 1.) Her apartment, which was one of six in the building, had a front patio door and a back door near the parking lot. (*Id.* ¶ 3.)

On December 19, 2012, at 9:43 p.m., a Cook County operator received a 911 call from an anonymous, female caller who reported that there was a domestic disturbance in progress in unit 1B. (*Id.* ¶¶ 4-5.) The caller said she would let the officers into the building when they arrived. (*Id.* ¶ 5.)

At 9:44 p.m., the operator dispatched officers to the apartment, with defendant Ruminski assigned as the primary officer. (*Id.* ¶ 6.) Ruminski knew from the dispatch that there had been two previous 911 calls from this building about domestic disputes, one made by "Aragon, A." and the other made by "April," both of which involved Scott Elvers. (*Id.* ¶ 10.)[1]

When Ruminski arrived at the apartment building a few minutes later, he flashed his light into the windows and patio door of Aragon's apartment, but did not see or hear anything. (*Id.* ¶¶ 7-8.) He pressed the buzzers for all of the apartments, but no one let him in. (*Id.* ¶ 8.) He then went to the back of the building, found the back door unlocked, and went in. (*Id.* ¶ 9.) He knocked on the back door of Aragon's apartment but received no response. (*Id.*)

At 10:22 and 10:23 p.m., respectively, defendants Trinidad and Karlos arrived at the building. (*Id.* ¶ 11.) Trinidad and Ruminski went to the front of the building, and after ringing all of the buzzers, someone let them in. (*Id.* ¶ 15.) When they went inside, a woman opened the door of apartment 1A, said she was the 911 caller, pointed to Aragon's apartment, and said something like, "they're at it again." (*Id.*; Defs.' LR 56.1(b)(3)(C) Stmt. ¶ 18; Pls.' Resp. Defs.' LR 56.1(b)(3)(C) Stmt. ¶ 15g.) Defendants confirmed through dispatch that Aragon's car was in the parking lot and they found her name on the mailbox for apartment 1B. (Defs.' LR 56.1(b)(3)(B) Stmt. ¶ 16.) Ruminski pressed his ear to the door of Aragon's apartment and heard rumbling, muffled noises coming from inside. (*Id.* ¶ 18.)

---

[1] Plaintiffs admit that Ruminski knew there had been 911 calls from the building about domestic disputes (*see* Pls.' LR 56.1(a) Stmt. ¶ 10) but contend he did not know that the calls were from Aragon. That, however, is a reasonable inference from the dispatcher's testimony about the information she gathered and typically provides to officers sent out on domestic disturbance calls. (*See* Pls.' Ex. D, Bonilla Dep. 40-47.)

2

At 10:38 p.m., defendant Flyke ordered Trinidad to breach the door of Aragon's apartment, after which Ruminski and defendant Dowdell kicked in the front door. (*Id.* ¶¶ 18, 23.) Defendants breached the door "because they believed the situation inside [Aragon's] [a]partment posed a danger to its occupants' safety." (Defs.' LR 56.1(b)(3)(C) Stmt. ¶ 19.)

Once inside, Ruminski and Dowdell opened the back door of the apartment for Karlos. (Defs.' LR 56.1(b)(3)(B) Stmt. ¶ 24.) Together, they proceeded down a dimly-lit hallway toward a bedroom. (*Id.*) Karlos opened the bedroom door and saw a woman lying in street clothes on top of the bed and a man kneeling on the floor on the opposite side of it. (*Id.* ¶¶ 25, 32.)

The parties dispute what happened next. Plaintiffs contend that Elvers obeyed the officers' commands, albeit after several prompts, and allowed himself to be handcuffed. (Pls.' LR 56.1(a) Stmt. ¶¶ 28-30, 35-36.) Defendants say Elvers refused to follow their orders and resisted being handcuffed. (*See* Defs.' LR 56.1(b)(3)(B) Stmt. ¶¶ 28-30, 35-36.)

Ultimately, Karlos arrested Elvers for obstructing a police officer by "knowingly resist[ing] the performance of Ofc. Karlos who is identified as a Cook County Sheriff Police Officer refused to open door to gain access to check the well-being of occupants." (Pls.' LR 56.1(a) Stmt. ¶ 38; Defs.' LR 56.1(b)(3)(B) Stmt. ¶ 38.)

On May 29, 2013, the charge against Elvers was stricken with leave to reinstate. (Defs.' LR 56.1(b)(3)(B) Stmt. ¶ 40.)

## **Discussion**

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we do not weigh evidence or determine the truth of the matters

3

asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

In Count I of the first amended complaint, plaintiffs allege that all of the defendants are liable under 42 U.S.C. § 1983 for unlawfully searching Aragon's apartment. The Fourth Amendment generally prohibits search and seizures performed without a warrant, but "[it] does not bar police officers from making warrantless entries and searches when they reasonably believe a person within is in need of immediate aid." *United States v. Richardson*, 208 F.3d 626, 629 (7th Cir. 2000). "[A]n objective standard governs the reasonableness of law enforcement officials' belief that exigent circumstances have arisen." *United States v. Dowell*, 724 F.2d 599, 602 (7th Cir. 1984). In other words, the Court asks whether a reasonable person would have believed that "there was a compelling need to act and no time to obtain a warrant," based on "the totality of facts and circumstances as they would have appeared to a reasonable person" in the officer's position. *Bogan v. City of Chi.*, 644 F.3d 563, 571-72 (7th Cir. 2011) (quotations omitted).

Viewed favorably to them, the record suggests that defendants entered Aragon's apartment less than an hour after the dispatcher received the 911 call. (Defs.' LR 56.1(b)(3)(B) Stmt. ¶¶ 4, 20.) It also shows that, when defendants entered the apartment, they knew: (1) a woman in apartment 1A of Aragon's building had called 911 and reported that she heard her neighbors yelling, thought they were intoxicated, and heard a woman yell "Don't hit me" and "Get your hands off me"; (2) Aragon had previously made calls to 911 about domestic battery from the apartment building; (3) the 911 caller said she would let the officers in the building, and when they arrived, the building's

4

back door was unlocked; (4) later, the caller let the officers in the front door of the building, pointed to Aragon's apartment, and said "they're at it again"; (5) Aragon's car was in the parking lot and her name was on the mailbox for apartment 1B; (6) Ruminski heard rumbling and muffled noises coming from Aragon's apartment that sounded as if the occupants were trying to be quiet; and (7) despite flashing lights in the windows and knocking on the doors, the occupants of Aragon's apartment did not open the door. (*See id.* ¶¶ 5, 8-10, 15, 16; Defs.' LR 56.1(b)(3)(C) Stmt. ¶¶ 4-5.) These facts are sufficient to create a genuine issue of fact as to whether there were exigent circumstances that justified a warrantless search of Aragon's apartment. *See United States v. Brown*, 64 F.3d 1083, 1086 (7th Cir. 1995) ("We do not think that the police must stand outside an apartment, despite legitimate concerns about the welfare of the occupant, unless they can hear screams. Doubtless outcries would justify entry, *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), but they are not essential."). Accordingly, the Court denies plaintiffs' motion for summary judgment on Count I.

In Counts II and III, Elvers asserts that defendants falsely arrested him, *i.e.*, arrested him without probable cause, in violation of federal and state law. *See Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 622 (7th Cir. 2010) ("Probable cause is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and section 1983."); *Lappin v. Costello*, 598 N.E.2d 311, 317 (Ill. App. Ct. 1992) ("If probable cause existed for the arrest, an action for false arrest cannot lie."). A police officer has probable cause if, at the time of the arrest, the facts and circumstances within his knowledge would make a prudent person believe "that the suspect has committed, is committing, or is about to commit an offense." *Padula v. Leimbach*, 656 F.3d 595, 601 (7th Cir. 2011) (quotations omitted); *see Lappin*, 598 N.E.2d at 317 ("Probable cause is defined

5

as a state of facts which, if known, would lead a person of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty.").

Defendants arrested Elvers for "knowingly resist[ing] or obstruct[ing] the performance by one known to the person to be a peace officer . . . of any authorized act within his . . . official capacity." (Defs.' LR 56.1(b)(3)(B) Stmt. ¶ 38); *see* 720 Ill. Comp. Stat. 5/31-1(a). "An arrest made by a peace officer is an 'authorized act' even if the arrest is unlawful. Consequently, resistance of even an unlawful arrest by a known officer is a violation of the statute." *City of Champaign v. Torres*, 824 N.E.2d 624, 629 (Ill. 2005) (quotations omitted); *see* 720 Ill. Comp. Stat. 5/7-7 ("A person is not authorized to use force to resist an arrest which he knows is being made . . . by a peace officer . . . even if he believes that the arrest is unlawful and the arrest in fact is unlawful."). Viewed favorably to defendants, the record shows that Elvers refused to follow their orders and resisted being handcuffed. (*See* Defs.' LR 56.1(b)(3)(B) Stmt. ¶¶ 28-30, 35-36.) That is sufficient to create a triable fact issue as to whether there was probable cause to arrest Elvers. Therefore, plaintiffs' motion for summary judgment on Counts II and III is denied.

Elvers fares no better with the malicious prosecution claim in Count IV. To prevail on this claim, he must prove, among other things, that defendants started or continued the obstruction proceeding against him without probable cause and the proceeding "terminated in a manner . . . indicative of [Elvers'] innocence." *See Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996). As discussed above, there is a triable fact issue as to the existence of probable cause, and plaintiff offers no law or facts that suggest the termination of the obstruction proceeding, which was stricken with leave to reinstate, is indicative of Elvers' innocence. Accordingly, plaintiffs' motion for summary judgment on Count IV is denied.

**Conclusion**

For the reasons set forth above, the Court denies plaintiffs' motion for summary judgment on Counts I-VI [43]. The parties are ordered to submit their final pretrial order in court on August 20, 2015 at 9:30 a.m.

**SO ORDERED.**                  **ENTERED: July 22, 2015**

                                       _____
                                         **HON. JORGE L. ALONSO**
                                         **United States District Judge**